UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GARY KENNETH WILLIAMS,

                         Petitioner,

v.                                Case No. 3:06-cv-350-J-32TEM

WALTER A. MCNEIL,[1]
et al.,

                         Respondents.

_____

## **ORDER**[2]

### **I. Status**

Petitioner Gary Kenneth Williams, proceeding *pro se* and *in forma pauperis*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) and Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Doc. #2) (hereinafter Memorandum) pursuant to 28 U.S.C. § 2254 on April 12,

---

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Walter A. McNeil is substituted for James R. McDonough as the proper party Respondent having custody over Petitioner.

[2] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the matter addressed herein and is not intended for official publication or to serve as precedent.

2006, pursuant to the mailbox rule.[3] Petitioner challenges a 1999 state court (Duval County, Florida) judgment of conviction for aggravated battery upon a person sixty-five years of age or older on the following grounds: (1) the evidence was constitutionally insufficient to support the conviction since it was based solely upon unsworn statements, and (2) defense counsel was ineffective for failure to object to the State's use, under the guise of impeachment, of prior inconsistent statements as substantive evidence of guilt.

Respondents have responded. <u>See</u> Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #7) (hereinafter Response).[4] Petitioner was given admonitions and a time frame to respond. <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #5). Petitioner has replied. <u>See</u> Petitioner's Reply to State's Answer to Petition for Writ of Habeas Corpus (hereinafter Reply) (Doc. #8). This case is now ripe for review.

---

[3] The Petition (Doc. #1) was filed in this Court on April 14, 2006; however, giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Petitioner handed it to prison authorities for mailing to this Court (April 12, 2006). <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988). The Court will also give Petitioner the benefit of the mailbox rule with respect to his *pro se* state court filings when calculating the one-year limitations period under 28 U.S.C. § 2244(d).

[4] The Court will hereinafter refer to Respondents' exhibits as "Ex."

## II. Procedural History

Petitioner was convicted of aggravated battery upon a person sixty-five years of age or older and was sentenced to thirty years of imprisonment. Ex. A at 8-9, 56, 83-87; Ex. B, Transcript of the Trial Proceedings (hereinafter Tr.) at 405. On appeal, Petitioner, through counsel, filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). The appellate court permitted Petitioner to file a *pro se* brief, in which Petitioner raised the following issues: (1) Petitioner was denied his constitutional rights where the trial court permitted doctors to testify to statements made to them by the victim during their examination of the victim about the assault offense against the victim; (2) the trial court abused its discretion by allowing the State to introduce prior inconsistent statements as substantive evidence; and (3) the trial court erred in failing to grant Petitioner's objection and subsequent motion for mistrial concerning comments during closing arguments, which sought to attest for the credibility and character of a witness. Ex. D. The State filed an Answer Brief. Ex. E. On May 2, 2000, the appellate court per curiam affirmed without issuing a written opinion. <u>Williams v. State</u>, 757 So.2d 504 (Fla. 1st DCA 2000); Ex. F. The mandate was issued on May 18, 2000. Ex. G.

On or about May 18, 2001, Petitioner filed a motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850 and thereafter filed a supplemental motion on June 12, 2001. In the motions, he

raised three grounds: (1) ineffective assistance of trial counsel for failure to object to the State's use of prior inconsistent statements made by witness Richard Davis to impeach witness Davis' testimony at trial; (2) ineffective assistance of trial counsel for failure to argue the State's key witness corroborated the defense theory thereby entitling Petitioner to a judgment of acquittal; and (3) ineffective assistance of trial counsel for not allowing Petitioner to testify. Ex. H at 361-65. On November 21, 2002, an evidentiary hearing was held. Ex. H, Transcript of the Evidentiary Hearing (hereinafter EH Tr.) at 35-95; Notice of Filing Complete Copy of Transcript of the Evidentiary Hearing Held on November 21, 2002 (Doc. #10), filed December 12, 2008.[5] On January 10, 2003, the trial court denied the Rule 3.850 motion. Ex. H at 361-65.

On appeal, Petitioner raised the following claims: (1) ineffective assistance of counsel for failure to object to the pretrial inconsistent statements of Richard Davis as substantive evidence of guilt, and (2) ineffective assistance of counsel for refusing to allow Petitioner the right to testify. Ex. K. The State filed an Answer Brief, and Petitioner filed a Reply Brief. Ex. L; Ex. M. On September 29, 2004, the appellate court per curiam affirmed without issuing a written opinion. Williams v.

---

[5] Since there are several relevant pages missing from the transcript of the evidentiary hearing, submitted as Exhibit H, the Respondents filed a complete copy of the transcript. See Notice of Filing Complete Copy of Transcript of the Evidentiary Hearing Held on November 21, 2002, filed December 12, 2008.

_State_, 886 So.2d 232 (Fla. 1st DCA 2004); Ex. N.  Petitioner's motion for rehearing was denied on November 3, 2004.  Ex. O.  The mandate was issued on November 19, 2004.  Ex. P.

On or about March 4, 2004, Petitioner filed a _pro se_ motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800(a). Ex. Q at 1-8.  Petitioner also filed an amended motion to correct illegal sentence with supplements.  _Id_. at 15-61.  The trial court denied the motions, and Petitioner appealed.  _Id_. at 99-110, 115-24; Ex. R.  On April 5, 2006, the appellate court per curiam affirmed without issuing a written opinion.  _Williams v. State_, 926 So.2d 1278 (Fla. 1st DCA 2006); Ex. S.  The mandate was issued on May 2, 2006.  Ex. T.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  _See_ 28 U.S.C. § 2244(d); Response at 3-5.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." _Schriro v. Landrigan_, 127 S.Ct. 1933, 1940 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a

district court is not required to hold an evidentiary hearing."
Id.

This Court has carefully reviewed the record and concludes
Petitioner is not entitled to an evidentiary hearing. The
pertinent facts of the case are fully developed in the record
before the Court. Smith v. Singletary, 170 F.3d 1051, 1054 (11th
Cir. 1999). Thus, the Court can "adequately assess [Petitioner's]
claim[s] without further factual development." Turner v. Crosby,
339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034
(2004). Therefore, an evidentiary hearing will not be conducted.

## V.  Standard of Review

Since this action was filed after the effective date of the
Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-
132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court
will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as
amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th
Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261
F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104
(2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th
Cir. 1998), cert. denied, 531 U.S. 840 (2000). Under AEDPA,
however, the review "is 'greatly circumscribed and highly
deferential to the state courts.' Crawford v. Head, 311 F.3d 1288,
1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d
1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[6] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006).

Stewart, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." Schriro, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v.

---

[6] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

<u>Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## VI. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of

counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. *Id*. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007). "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of Strickland. We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation omitted). As a result of this presumption, a petitioner must

show "that no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Thus, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." <u>Id</u>. at 1314 n. 15 (quoting <u>Williams v. Head</u>, 185 F.3d 1223, 1228 (11th Cir. 1999)). Moreover, because the standard is an objective one, trial counsel's admission that his performance was deficient "matters little." <u>Id</u>. at 1315 n.16. We must also avoid "the distorting effects of hindsight" and evaluate the reasonableness of counsel's performance from the perspective of counsel at the time the acts or omissions were made. <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner claims that the evidence was constitutionally insufficient to support the conviction since it was based solely upon unsworn statements. Petition at 6-7; Memorandum at 2-4. Specifically, he argues that his conviction for aggravated battery upon a person sixty-five years of age or older violated due process because it was obtained without sworn testimony. He states in pertinent part:

> My conviction violates the constitutional due process requirement that a conviction must be supported by sufficient evidence based upon sworn testimony. Contrary to the clearly established federal law by the U.S. Supreme Court (see Memorandum of Law), the State produced only unsworn, out-of-court,

inconsistent statements to obtain [a] conviction against me.

Excepting the sworn trial testimony of the alleged victim himself -- who testified under oath at trial that I DID NOT commit the charged aggravated battery and that his injuries were a result of his own actions in assaulting me -- every one of the State's witnesses testified only to second-hand unsworn, out-of-court, inconsistent statements of the alleged victim as the basis of the State's case.

Given the alleged victim's sworn trial testimony which repud[i]ated and/or explained the prior statements and his trial testimony under oath that no crime was committed, the prior unsworn, out-of-court, inconsistent statements could not serve as or constitute "substantive" evidence necessary to support a conviction. Since no sworn testimony was presented and the entirety of the State's case [was] based only upon unsworn, out-of-court, inconsistent statements, there was insufficient evidence to support my conviction and my conviction [was] obtained in violation of the constitutional prohibition against conviction solely upon the basis of unsworn statements.

Petition at 6-7 (footnote omitted). As acknowledged by the parties, Petitioner raised this claim on direct appeal (ground two). Petition at 8; Response at 5-6; Ex. D.

To the extent that the claim was raised on direct appeal in the federal constitutional sense (Ex. D), and to the extent that the federal constitutional claim was addressed on the merits by the appellate court, there is a qualifying state court decision.[7]

---

[7] As previously stated, for a state court's resolution of a claim to be an adjudication on the merits, so that the state

Thus, this claim should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Further, the claim is without merit. The Due Process Clause of the Fourteenth Amendment requires the State to prove beyond a reasonable doubt each element of the offense charged. <u>Thompson v. Nagle</u>, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 314 (1979)), <u>cert</u>. <u>denied</u>, 522 U.S. 1125 (1998). "[T]his court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." <u>Thompson</u>, 118 F.3d at 1448 (citing <u>Machin v. Wainwright</u>, 758 F.2d 1431, 1435 (11th Cir. 1985)). The relevant question is whether any rational jury, after viewing the evidence

---

court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).

in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. Thompson, 118 F.3d at 1448.

Petitioner was charged with aggravated battery upon a person sixty-five years of age or older in violation of Fla. Stat. § 784.08(2)(a). Ex. A at 8-9. Section 784.08(2)(a) states in pertinent part:

> Whenever a person is charged with committing an assault or aggravated assault or a battery or aggravated battery upon a person 65 years of age or older, regardless of whether he or she knows or has reason to know the age of the victim, the offense for which the person is charged shall be reclassified as follows:
>
> In the case of aggravated battery, from a felony of the second degree to a felony of the first degree.

Prior to the trial, defense counsel filed a motion in limine (No. 1), requesting that the court prohibit the State from introducing any evidence relating to or testimony of the following: statements made by the victim to members of the Jacksonville Fire and Rescue, including, but not limited to, Garrett D. Jordan and Gregory L. Miller, and staff members of University Medical Center, including but not limited to, Simon D. Lampard, Emram R. Imani, James M. Perry, Constantine Toumbis and Todd Wylie. Ex. A at 39-40. At a hearing, the court denied the motion with respect to Dr. Toumbis and Dr. Wylie and reserved ruling with respect to the other potential witnesses. Id. at 41; Ex. I at 7-22.

Additionally, defense counsel filed a motion in limine (No. 3), which requested that the court prohibit the State from introducing any evidence relating to or testimony of the following: statements made by the victim to Vassie Griffin, Preston Bookman, James Owens and Linda Bradley. Ex. A at 45-47. At a hearing, the prosecutor stated:

> The witnesses Griffin, Bookman, Owens, and Bradley are all civilian witnesses who the victim made statements to regarding the assault in this case[.] We do not agree that that is not admissible, but we agree that it's hearsay[.] In other words, if the victim denies that he made those statements, we intend to put them on for impeachment purposes, however, not for substantive evidence.
>
> If we can agree on that, I think that this is settled[.]

Ex. I at 5. Defense counsel agreed that it would not be an issue at trial since the victim had acknowledged that he made the prior statements, but then denied the truthfulness of the prior statements. Id. The prosecutor then clarified the State's position with respect to possible impeachment of the victim.

> Well, just to make it clear for the court, and just to give you forewarning, we really have no idea what the victim's going to say in this case[.] Every time we talk to him, he says something different[.] So I just think we need to make it clear what we intend to do here[.] If he comes in and admits that he says things, we can't put them on[.] If he says, "I said them and they weren't true," we can't put these people on[.] If he says he didn't say them, we do intend to call them[.]

Id. at 5-6.  The trial judge granted the motion in limine as to the statements for substantive evidence.  Ex. A at 47; Ex. I at 6.

Defense counsel also filed a motion in limine (No. 2), which requested that the court prohibit the State from introducing any evidence relating to or testimony of the following: statements made by the victim to members of the Jacksonville Sheriff's Office or State Attorney's Office, including but not limited to, T.L. Callahan and Leon Bing.  Ex. A at 42-43.  At a hearing, the prosecutor explained the State's position:

> However, again, Mr[.] Grant's motions assume that the victim will testify as he did in his deposition[.] I can't say that that's what he's going to do[.] So we're in the same position on number two as we were on number three[.] If the victim says he said it, we won't put him on[.] If he says he didn't, we'll put it on for impeachment only and not for substantive evidence[.]

Ex. I at 7.  Defense counsel agreed, and the trial judge granted defense counsel's motion.  Ex. A at 44; Ex. I at 7.

Contrary to Petitioner's arguments here, there was sufficient evidence to support the jury's guilty verdict.  At the trial, Richard Davis (the eighty-five year old victim) testified that he and Petitioner lived together at the time of the incident.  Tr. at 54, 55, 87.  He considered Petitioner to be like a son to him.  Id. at 75.  At the time of the incident, Petitioner and Davis were the only two people at the home.  Id. at 57.  Davis stated that Petitioner and he were arguing, that he hit Petitioner first and

knocked him down and then tried to hit him again, but missed, fell to the ground and broke his hip. Id. at 58-59, 81, 95-96. Davis testified that Petitioner did not hit him. Id. at 82, 89. When Davis fell to the ground, he asked Petitioner to call rescue, but Petitioner said he was afraid that Davis would have him put in jail. Id. at 59-61, 83. As a result of the fall, Davis had blood all over his head, and his body was in pain. Id. at 61-62.

Davis admitted that, prior to the trial, he had told his neighbors that Petitioner had beaten him. Id. at 64, 85. But, he explained that his prior accusations against Petitioner were made up because he was angry that he had hurt himself. Id. at 64-65, 66. When the rescue personnel arrived, he told them he was beaten. Id. at 67, 86, 87. And, when the police arrived, he told them Petitioner had hit him, but that was not true; he was merely angry for hurting himself. Id. at 67-68, 88. He further testified that the statements he had made to the physicians at University Hospital (that Petitioner beat him) were not true. Id. at 90.

Dr. Todd Wylie, a resident physician at University Medical Center, testified regarding the injuries sustained by Davis on July 19, 1998. Id. at 102-29. He stated that, in examining and treating a patient, it is beneficial to know how the patient was injured, and Davis told him that he had been beaten. Id. at 107-08. He confirmed that Davis' injuries (broken hip, black eye and

bloody nose) were consistent with the history Davis had given him. Id. at 115, 117, 120-21, 124, 129.

Preston Bookman, a neighbor, testified that he saw Davis on July 19, 1998, lying on the floor near the front door; he was bloody, beaten up, groaning in pain and was unable to stand upright. Id. at 131, 134, 135, 142. Another neighbor, Patricia Ann Johnson, testified that Davis' eye was swollen, there was blood coming from his eye, his nose was clogged with blood and blood was coming down over his mouth and down his neck. Id. at 147-48, 149. Vassie Griffin, another neighbor, testified that she saw Davis on July 19, 1998, and he was bleeding, crying and was in pain. Id. at 158-59, 160. She affirmed that Davis had told her that Petitioner had knocked him down and had beaten him. Id. at 173-74, 179-80.[8]

Officer Callahan testified that, when he arrived at the house, the house was "disarrayed" and Davis had dried blood from head to toe. Id. at 182. Leon Bing, an investigator with the State Attorney's Office, testified that he interviewed Davis after he had been discharged from a nursing home in Orange Park. Id. at 186-88. He affirmed that Davis told him that Petitioner had hit him in the

---

[8] After Davis' testimony, the prosecutor clarified that she planned to call Vassie Griffin, as an impeachment witness. Tr. at 100-01. The prosecutor's decision to call Griffin, as an impeachment witness, was based on the victim's testimony that he did not remember making a statement to Griffin that he had been assaulted. Id. at 65.

face and caused the injury to his hip.[9]  <u>Id</u>. at 189, 193-94.

Specifically, Investigator Bing explained:

> He stated -- as I said, Mr. Davis changed
> his story several times, but one of his
> initial statements was that he was hit in the
> face by Mr. Williams and he fell down and
> that's how he injured his hip.

<u>Id</u>. at 194.

Garrett Jordan, a paramedic, testified that it is standard
medical practice when an injured person is found to ask him how he
sustained the injuries.  <u>Id</u>. at 209.  Specifically, he stated:

> Once I asked Mr. Davis what happened to
> him, he – Mr. Davis stated to me that he was
> assaulted.  And he stated he was assaulted
> about 2 a.m.
>
> I also asked Mr. Davis did he have any
> loss of consciousness as opposed to being
> assaulted.  He did admit to having some loss
> of consciousness.  I also asked him how or
> what he was assaulted with.  The patient
> stated that it was unknown, he didn't know.

<u>Id</u>. at 210.

Detective Gallaher, the lead investigator who interviewed
Petitioner two days after the incident, testified that Davis told
him what had happened and, as a result of that information, he
obtained an arrest warrant for Petitioner.  <u>Id</u>. at 219, 221.

---

[9] After Davis' testimony, the prosecutor clarified that she
planned to call Investigator Bing, as an impeachment witness.  Tr.
at 100-01.  The prosecutor's decision to call Investigator Bing,
as an impeachment witness, was based on the victim's testimony that he
did not remember making a statement to Investigator Bing that he
had been assaulted.  <u>Id</u>. at 71.

Detective Montgomery testified that he interviewed Petitioner on July 31, 1998, and that Petitioner admitted, in a post-Miranda statement, that he had struck Davis, but that he threw only one punch after Davis struck him first. Id. at 223, 229-30.

Dr. Constantine Toumbis, a resident physician at University Medical Center, testified that he examined Davis in the emergency room on July 19, 1998, for a surgical consultation. Id. at 269-70. He stated that it is normal procedure to take the history of what happened from the patient to determine if the patient remembers the details of the event. Id. at 271. He noted that the interview of the patient is beneficial in determining where the patient hurts and what areas to focus on during the physical examination. Id. at 271-72.

Dr. Toumbis stated that, during the interview, Davis told him that he was beaten up at his home, that he was picked up, thrown down, kicked and hit repeatedly. Id. at 272, 285, 286, 287. After x-rays were taken, Dr. Toumbis concluded that Davis had sustained a left intertrochanteric femoral fracture ("the main long bone in his leg was fractured at the top part of the bone, and it was through the entire bone; it was fractured in more than one place"). Id. at 274. He opined that Davis' injuries were consistent with the history that Davis gave him. Id. at 284-86. He noted that Petitioner was hospitalized for eight days and then sent to a nursing facility for rehabilitation. Id. at 284, 286.

At the trial, the trial judge instructed the jury as follows:

> Gary Kenneth Williams, the defendant in this case, has been accused of the crime of aggravated battery on a person 65 years of age or older.
>
> Before you can find the defendant guilty of aggravated battery upon a person 65 years or older, the state must prove the following three elements beyond a reasonable doubt: One, Gary Kenneth Williams intentionally touched or struck Richard Davis against his will; two, Gary Kenneth Williams in committing the battery intentionally or knowing caused great bodily harm, permit disability, or permanent disfigurement to Richard Davis; three, Richard Davis was at the time 65 years of age or older.

Id. at 378-79.

Thus, as reflected above, the State presented sworn eyewitness testimony detailing the victim's injuries, medical evidence and Petitioner's admission to hitting the victim to support the charged crime of aggravated battery upon a person sixty-five years of age or older. Considering the nature and extent of the victim's injuries, the opportunity Petitioner had to hurt the victim when they were home alone and Petitioner's own statement indicating that he had struck the victim, the jury had sufficient evidence to conclude that Petitioner had battered the victim. And, although the victim changed his story at trial and explained that his prior statements (that Petitioner had beaten him in his home) were made up because he was mad he had hurt himself, the evidence was

sufficient for the jury to conclude that Petitioner had beaten Davis.

Thus, Petitioner's sufficiency of the evidence challenge predicated upon a claim that the State lacked sworn testimony is without merit. When all reasonable inferences are resolved in favor of the guilty verdict, Petitioner's conviction for aggravated battery upon a person sixty-five years of age or older was not a denial of due process of law. Petitioner is not entitled to relief on this claim. See Jackson v. Virginia, 443 U.S. 307.

## B. Ground Two

As ground two, Petitioner claims that defense counsel was ineffective in that he should have objected to preclude admission of the victim's prior unsworn, out-of-court, inconsistent statements and their use as substantive evidence. As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion (as ground one). The court conducted an evidentiary hearing on this ground. In denying this ground on the merits, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> In ground one[,] Defendant asserts that counsel rendered ineffective assistance by failing to object to the State's use of prior inconsistent statements made by witness Richard Davis to impeach witness Richard Davis' testimony at trial. In State v. Richards, 27 Fla. L. Weekly D1797 (Fla. 3d DCA

2002)[10] the Third District Court of Appeal
held that a witness must be evaluated as a
whole and that "[i]f the testimony is useful
to establish any fact of consequence
significant in the conte[x]t of litigation the
witness may be impeached by a prior
inconsistent statement as to any other matter
testified to." On November 21, 2002, an
evidentiary hearing was held to address this
claim. During the hearing[,] Defendant's
former counsel Maurice Grant testified that
the victim's testimony was necessary to
establish the venue of the charged offense,
the age element of the charged offense and the
identity of Defendant as the alleged
perpetrator of the charged offense. (Exhibit
C, pages 27-33). Additionally[,] Mr. Grant
testified that the alleged impeachment of the
victim was not actually impeachment because
the victim acknowledged he had made the prior
statements and it was Mr. Grant's belief that
the State called the victim to establish
various elements of the charged offense.
(Exhibit C, pages 32-34). Further, this Court
notes that Mr. Grant testified that neither he
nor the State knew for sure exactly what the
victim was going to testify to (Exhibit C,
pages 33-34). Moreover, this Court notes that
throughout the victim's testimony the victim
admitted to saying some things and claimed he
was angry for hurting himself. (Exhibit D,
pages 53-102). Therefore[,] this Court finds
that the testimony of the victim was necessary
to establish a legitimate forensic purpose.
<u>Richards</u>. Accordingly[,] this Court finds
that Defendant has failed to establish error
by counsel or prejudice to his case.

Ex. H at 362-63.

As noted previously, upon Petitioner's appeal, the appellate

court per curiam affirmed the trial court's order. Accordingly,

---

[10] Withdrawn and superseded by <u>State v. Richards</u>, 843 So.2d 962
(Fla. 3rd DCA 2003), <u>rev</u>. <u>denied</u>, 851 So.2d 729 (Fla. 2003).

the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The presumption that counsel's performance was reasonable is even stronger since he is an experienced criminal defense attorney.[11]

---

[11] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316

The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. 668, 690 (1984). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003). Counsel's performance was not deficient.

At the evidentiary hearing, Petitioner was represented by counsel (Christopher J. Anderson). Mr. Maurice Grant, Petitioner's trial counsel, testified that he had tried over one-hundred cases and had dealt with impeachment evidence in nearly every trial at some point. EH Tr. at 53. Mr. Grant recalled that he had filed a pretrial motion with respect to the testimony of Dr. Toumbis to

_____

(11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000). Mr. Maurice Chester Grant, II, was admitted to the Florida Bar in 1989. See http://www.floridabar.org. At the time of Petitioner's criminal trial in 1999, he had practiced criminal law approximately ten years as an Assistant Public Defender. EH Tr. at 51-52.

keep out any statements that the victim made to him in the course of the examination after the incident.[12]  He explained:

> The motion was a motion in limine to keep out any statements that Mr. Davis, the alleged victim in the case, would have made to Dr. Toumbi[s] and any other medical staff or anyone who provided medical services to Mr. Davis.
>
> The purpose of it was to, like I say, to keep out the statements.
>
> The focus was that Mr. Davis had made statements to the medical staff indicating how he had received his injuries.
>
> He, subsequent to that, had indicated that yes, he had made those statements, but those statements were false.
>
> And therefore, the intention was to exclude any statements that he would have made because they were no longer reliable.
>
> . . . .
>
> My recollection, and that's because I have to use my recollection because I don't have -- I have not received a transcript of the actual hearing[.] But from looking at the file, it is my recollection that the Court granted the motions to exclude, with respect to medical staff or persons who provided medical services, with the exception of two people, one of them being Dr[.] Toumbi[s.]

---

[12] Prior to the trial, defense counsel filed a motion in limine (No. 1), requesting that the court prohibit the State from introducing statements made by the victim to Garrett D. Jordan, Dr. Toumbis and Dr. Wylie.  Ex. A at 39-40.  At a motion hearing, the court denied the motion with respect to Dr. Toumbis and Dr. Wylie and reserved ruling with respect to Jordan.  Id. at 41; Ex. I at 7-22.

Id. at 54-55. At the trial, Mr. Grant had objected to Dr. Toumbis' testimony. Tr. at 272. He explained:

> The objection was based upon my prior motion in limine which the Court had denied[.] But I had to preserve the issue[.] And therefore I was objecting at that time[.]

EH Tr. at 55. The trial judge overruled counsel's objection. Tr. at 272. Thus, Dr. Toumbis testified that the victim told him that he was beaten up at home, that he was lifted, thrown down and kicked and hit repeatedly. Id. Mr. Grant, at the evidentiary hearing, recalled that the statement was admissible as an exception to the hearsay rule since "it was for medical records purposes or medical diagnosis." EH Tr. at 56.

Mr. Grant also objected to the testimony of Garrett Jordan, the paramedic, who confirmed that, as standard medical practice in obtaining a patient's history, he inquired as to how the victim had sustained the injuries. Tr. at 209. The trial judge overruled counsel's objection. Id. at 210. Thus, Jordan explained that the victim told him he was assaulted at about 2 a.m. Id. Mr. Grant, at the evidentiary hearing, testified that he understood the court's ruling to allow the statement in as medical hearsay. EH Tr. at 58.

Mr. Grant also objected to the testimony of Dr. Todd Wylie, who testified that, to aid him in conducting his examination of the victim, he inquired as to how the victim had sustained the injuries. Tr. at 107-08. The trial judge overruled counsel's

objection.  _Id_. at 108.  Dr. Wylie testified that the victim told him he had been beaten.  _Id_.  Mr. Grant, at the evidentiary hearing, testified that he understood the court's ruling to allow the statement in as medical hearsay.  EH Tr. at 59.

With respect to the issue of the State's calling Mr. Davis, the victim, as a witness and thereafter impeaching him with his prior inconsistent statements, Mr. Grant testified as follows:

> You know, I -- it is -- you can say impeach.  But the way it happened is Mr. Davis had always, and I say always in the sense of from the point of his deposition, had stated that Mr. Williams had not done anything to him.
>
> But he admitted that he had in fact made the earlier statements.  So to some extent it is not really an impeachment because he himself acknowledged that he made the prior statement.
>
> . . . .
>
> If there was ever a discussion about whether or not Mr. Davis should be allowed to testify, my response would have been that I can't decide who can testify.  He is the alleged victim.  The State can call him as a witness.  I can't prevent them from calling him as a witness.
>
> We don't know what he is going to say until he takes the stand.

EH Tr. at 66-67.  Mr. Grant concluded that it was not the State's purpose to call the victim to the stand for the sole purpose of impeachment.  He stated:

> [T]he [State's] purpose, as I perceive it, for calling Mr. Davis to the stand was to

27

> establish that Mr. Davis was a victim in the
> case, that Mr. Davis had been assaulted. Mr.
> Davis now has renounced any prior statements
> that he made. But nevertheless, he is a
> victim in the case.
>
> And that was the position that I thought
> that the Government -- the State was taking.
>
> And I can say that because I had numerous
> conversations with Shauna Wright, who was the
> prosecutor, as well as Jim Pimentel, trying to
> convince them not to prosecute Mr. Williams.

Id. at 68.

Thus, Mr. Grant noted and the record supports his conclusion that the victim's testimony was necessary to establish the venue of the charged offense, the age of the victim as an element of the charged offense and the identity of Petitioner as the perpetrator of the offense. Thus, at trial, when the victim made inconsistent statements about the cause of his injuries, the State was entitled to impeach him about his prior inconsistent statements. It was reasonable and appropriate for defense counsel not to object to the State's use of the victim's prior inconsistent statements as impeachment.

As previously noted, the prosecutor called two impeachment witnesses (Vassie Griffin and Investigator Bing) since the victim, at trial, denied making statements to them that Petitioner had beaten him. Tr. at 65, 71, 100-01. The prosecutor, at the hearing on defense counsel's motions in limine, clarified her plan to call such witnesses for impeachment purposes, not as substantive

evidence. Ex. I at 5, 7. Defense counsel acknowledged that the two witnesses could be called for impeachment purposes since the victim had denied that he told them that Petitioner had beaten him. Id. at 5, 6; Tr. at 100-01.

Further, as noted by defense counsel, it was clear that the victim did not want to prosecute Petitioner and that fact was brought out at the trial. EH Tr. at 67; Tr. at 117A-18. Mr. Grant noted that the trial transcript reflects that Mr. Davis stated exactly what he wanted his testimony to be: that he assaulted Petitioner Williams, and in the course of committing the assault, he fell and hit his head and broke his hip and that he had previously lied about Petitioner Williams' assaulting him. EH Tr. at 68; see Tr. at 58-59, 81, 82, 89, 95-96. As noted by Mr. Grant, the victim actually acknowledged that he had made the prior inconsistent statements about how he sustained his injuries, but explained that he made the statements because he was angry he had hurt himself. EH at 66-67; Tr. at 64-66.

Defense counsel cannot be faulted for not raising a meritless objection. Mr. Grant lacked a good faith basis to object to the admission of the victim's pretrial inconsistent statements. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that

Petitioner has alleged he should have provided. The State proved
Petitioner's guilt without the challenged testimony.

At trial, the State adduced evidence which demonstrated that
Petitioner was alone with the victim when the victim suffered a
broken hip, black eye and bloody nose and that the house was in
disarray. Petitioner Williams, in a post-Miranda statement,
admitted that he had struck the eighty-five year old victim. Tr.
at 225-29. The following colloquy ensued:

> [STATE]: Did you ask him about the
> incident with Richard Davis earlier in July?
>
> [DETECTIVE MONTGOMERY]: Yes, ma'am, I
> did[.]
>
> [STATE]: What did he say?
>
> [DETECTIVE MONTGOMERY]: He stated that --
> and he admitted that he had struck the victim
> but that he only did it after he was struck by
> the victim first[.] He also said that he threw
> only one punch[.]

Id. at 229. However, the medical evidence reflects the severity of
the victim's injuries. The medical evidence was consistent with
the victim having been beaten repeatedly rather than just falling
down on his own. Dr. Wylie and Dr. Toumbis opined that Davis'
injuries were consistent with the history that Davis provided to
them.

Considering the totality of the circumstances, there was no
reasonable probability that, but for the claimed error, the jury
would have acquitted Petitioner of the aggravated battery upon a

person sixty-five years of age or older.  Petitioner has failed to show both deficient performance by defense counsel and resulting prejudice.  Thus, the ineffectiveness claim is without merit.

## **VIII. Conclusion**

Any other claims not specifically addressed are found to be without merit.  Accordingly, for all of the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of May, 2009.

TIMOTHY J. CORRIGAN
United States District Judge

sc 5/7
c:
Gary Kenneth Williams
Ass't Attorney General

31